**In re ST. JOHN MEDICAL CENTER.**

[Cite as *In re St. John Med. Ctr.* (1993), 91 Ohio App.3d 310.]

Court of Appeals of Ohio,
Franklin County.

Nos. 93AP–524, 93AP–525 and 93AP–526.

Decided Oct. 28, 1993.

*Squire, Sanders &· Dempsey, David J. Young, Robert C. Maier* and *Peter H. Mihaly,* for appellant St. John Medical Center.

*Lee Fisher,* Attorney General, and *Kent Shimeall,* Assistant Attorney General, for appellee Ohio Department of Health.

*Bricker & Eckler, Gretchen A. McBeath, Scott Taebel* and *William L. Fealko III,* for appellee Ohio Valley Hospital.

*Webster & Assoc.* and *Geoffrey E. Webster,* for appellee Ford–Hull–Mar, Inc.

---

WHITESIDE, Judge.

Appellant, St. John Medical Center ("St. John"), appeals from an order of the Certificate of Need Review Board ("CONRB") denying appellant's application for a certificate of need ("CON"). Appellant presents the following assignment of error:

"The Certificate of Need Review Board violated St. John Medical Center's statutory and constitutional religious free exercise rights by denying St. John a CON under the circumstances of this case."

St. John, located in Sylvania, Ohio, is a hospital sponsored by the Sisters of St. Francis of Sylvania, Ohio. Sisters of St. Francis is a Roman Catholic religious order ("the Order"), consisting of some four hundred women who have made Catholic health care their ministry for life. The Order sponsors five hospitals throughout the United States in addition to several nursing homes, an elderly living center and a home for battered women. The hospitals are controlled under the Franciscan Services Corporation, a nonprofit corporation, which reports directly to the general council of the Order. Members of the Order are placed on each of the hospital's boards to ensure the Order's core values of reverence, stewardship and service are practiced in the hospitals under their sponsorship. The Order also runs an organized program to train their employees on how to carry forth their mission. At this time, all of the employees in all five hospitals have gone through the training program.

St. John's health care is a holistic approach to medicine, which focuses on the spiritual, psychological, and physical, as well as medical, needs of a patient. A pastoral care department of St. John performs a spiritual assessment on all incoming patients.[1] The pastoral caregivers are concerned with the patient's concept of God, their support system, the approach the person has in relationship to hope, and the patient's subjective concept of the meaning of illness and

---

1. A patient may refuse the pastoral care department's services, but the evidence revealed few refuse the assessment.

hospitalization. St. John welcomes all patients, irrespective of religious affiliation, and the pastoral services focus on spirituality, rather than Catholicism. However, thirty percent of the patient population on a monthly basis is Catholic at St. John, and the hospital provides Catholic services on a daily basis. A convent is located on the hospital property, and Catholic symbols are located throughout the facility.

St. John applied for a CON to convert twelve medical/surgical beds to skilled nursing beds, the need for thirty-two additional nursing beds in the area [2] having been determined by calculations of the Ohio Department of Health ("ODH"). St. John's application was "batched" and reviewed comparatively with three other long-term care bed applications. The director of ODH denied St. John's application but granted a CON for skilled nursing beds to two of the other applicants, Ford–Hull–Mar, Inc. (ten intermediate care beds), and Ohio Valley Hospital (conversion of twenty-two medical/surgical beds to skilled nursing beds). St. John appealed the director's decision to the CONRB, which appointed a hearing examiner to hear the appeal on November 3, 1992. The hearing examiner recommended that the board affirm the director's denial of St. John's application. St. John filed objections to the hearing examiner's recommendation. On March 18, 1993, the board adopted the hearing examiner's recommendation from which St. John filed a timely appeal to this court.

St. John contends the CONRB failed to properly consider the criteria set forth in R.C. 3702.52(C) and Ohio Adm.Code 3701–12–20(P) in denying its application for a CON. R.C. 3702.52(C) reads in pertinent part:

"Any decision to grant or deny a certificate of need *shall consider the special needs and circumstances resulting from moral and ethical values and the free exercise of religious rights of* health care *facilities* administered by religious organizations, and the special needs and circumstances of children's hospitals and small rural hospitals." (Emphasis added.)

Ohio Adm.Code 3701–12–20(P) reads:

"The director shall consider the special needs and circumstances resulting from moral and ethical values and the free exercise of religious rights of health care facilities administered by religious organizations."

Both of these provisions require consideration of the rights of the health care facilities and their sponsoring religious organizations prior to the determination of whether a CON should issue. A review of the record reveals that neither the director of ODH nor the CONRB considered the rights of St. John and the

---

**2.** St. John Medical Center is located in Jefferson County and was, and remains, the only facility in Jefferson County without skilled nursing beds and, even if granted the CON for twelve beds, would have only about two percent of the Jefferson County beds.

Sisters of St. Francis to pursue their religious mission of providing holistic health care to the Steubenville-area community.

Neither the ODH consultant's report dated May 22, 1992, nor the ODH letter of denial dated June 18, 1992, indicates the director of ODH considered in any manner the criteria set forth in R.C. 3702.52(C) or Ohio Adm.Code 3701–12–20(P). On St. John's appeal of the director's decision to the CONRB, evidence on these issues was presented to the board's hearing examiner. The hearing examiner's report and recommendation reflects the following findings on these issues:

"13. St. John argued in these appeals that it is entitled to twelve of the twenty-two nursing home beds ODH awarded to OVH [Ohio Valley Hospital] because they [sic] have had some difficulty placing their patients in sub-acute beds, and because they are a religiously sponsored hospital.

" * * *

"39. Both hospitals provide for the religious needs of all patients, including Catholic ones.

"40. Neither hospital discriminates against patients on the basis of religion, race, or financial capability.

"41. Approximately 18% to 25% of OVH's inpatient volume are Catholic patients. This same percentage of Catholic patients is also present in Ross Park.

"42. The percentage of Catholic patients in OVH and Ross Park track very closely to the actual proportion of Catholic residents in Jefferson County.

"43. Not all patients admitted to St. John are of the Catholic faith and many Catholic patients select to go to OVH rather than St. John.

"44. The record evidence establishes that the needs of Catholic and non-Catholic patients alike are being met at Ross Park."

The referee made the following conclusion of law:

"7. The certificate of need laws do not accord St. John a special entitlement to nursing beds merely because it is a Catholic-affiliated institution."

The board adopted the hearing examiner's report and recommendation, including those findings stated herein. It is clear from the hearing examiner's report that the focus of her inquiry into the "special needs and circumstances resulting from moral and ethical values and the free exercise of religious rights of health care facilities administered by religious organizations" (R.C. 3702.52[C]) focused not on the facility but, instead, on the ability of Catholic patients to obtain medical care in the Steubenville community and the patient's ability to receive religious services during a skilled nursing stay. Neither of these are determina-

tive of the issues required to be considered by R.C. 3702.52(C), which specifically requires consideration of religious values and rights of "health care facilities" which are administered by religious organizations.

R.C. 3702.52(C) requires the board to conduct a two-step analysis into the special needs and circumstances of health care facilities administered by religious organizations. First, the board must consider the special needs which arise because of the moral and ethical values reflected in the day-to-day operation of the health care facility and the effect the CON will have on the facility's ability to carry on those values. St. John provides a holistic approach to medicine. Separate and apart from the religious nature of the pastoral services, the holistic approach to medicine focuses on the psychological and family needs of a patient in addition to the patient's physical needs. The board did not consider the impact the CON would have on the hospital's ability to provide holistic medicine to its patients. In addition, the board did not consider the availability of a holistic approach to medicine in other facilities in the community. The board is required to consider if St. John has a special need for skilled nursing beds to continue its mission of providing holistic medical services. The record indicates the special needs of St. John arising from the moral and ethical values reflected in its holistic approach to medicine were not even considered by the board as required by R.C. 3702.52(C).

Furthermore, the board's hearing examiner did not consider the religious "free exercise" rights of St. John and the Order. In this she was in error as the statute requires consideration of the health care facility's (St. John's) rights, not the patient's opportunity to obtain religious comfort while in a skilled nursing setting.

It is indisputable (as recognized by the General Assembly) that the Sisters of St. Francis's right to religious freedom is protected by the First Amendment of the United States Constitution and Section 7, Article I of the Ohio Constitution. We reject ODH's contention that a religious organization loses its religious freedom if it chooses to become a nonprofit corporation such as St. John or an association such as the Sisters of St. Francis. ODH's argument is specious and without merit. R.C. Chapters 1702 and 1715 specifically recognize that a nonprofit corporation may be a religious organization. R.C. 1702.01(D) defines "charitable corporation" to include one organized and operated exclusively for religious purposes. See, also, R.C. 1702.09, 1715.01, and R.C. 1715.18.

The Free Exercise Clause of the First Amendment to the United States Constitution, which is applied to the states through the Fourteenth Amendment, provides: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof * * *." Freedom of religion is also protected under Section 7, Article I, Ohio Constitution, which reads in pertinent part:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. * * *"

The "free exercise" rights protected by the state and federal Constitutions were recognized by the General Assembly when it enacted R.C. 3702.52(C), requiring consideration of these rights in a CON application. The CONRB did not undertake the consideration required by R.C. 3702.52(C) as is evidenced by the hearing examiner's findings and her conclusion that, as a matter of law, St. John's religious affiliation did not entitle St. John to a CON. The record is replete with arguments that to consider St. John's religious rights would grant all religious institutions an entitlement to receive any CON applied for. These arguments were adopted by the hearing officer as reflected in her conclusions of law. However, the focus of the CONRB should not be whether a hospital's religious affiliation *per se* entitles it to a CON but, rather, whether denial of the CON interferes with a religious institution's ability freely to exercise its religious rights. The language of R.C. 3702.52(C) recognizes this principle when it requires the consideration of "the special needs and circumstances resulting from * * * the free exercise of religious rights of health care facilities administered by religious organizations."

The religious nature of St. John and its holistic approach to medicine clearly distinguishes it from the other hospitals and facilities located in the Steubenville area. While St. John's religious affiliation does not guarantee a CON, it must be considered prior to a denial of a CON application. The CONRB must consider whether the CON is necessary for St. John and its sponsoring Order to continue to provide religious-based holistic care to its members, which may include the community at large. Furthermore, the CONRB must consider if similar, religious-based health care is available in the community. If not, the issue is whether the religious-based facility has shown a special need for the CON and whether its ability freely to exercise its religion be impeded. This court does not hold the CONRB or the director must favor religious institutions to the detriment of secular institutions. Rather, if the evidence reveals a religiously sponsored facility is engaged in purely secular activities, the facility should be treated as any other secular institution, and R.C. 3702.52(C) would be inapplicable. However, R.C. 3702.52(C) expressly provides that the ODH and CONRB may not apply the CON laws in such a manner as to restrict the free exercise of religion by health care facilities administered by religious organizations.

The United States Supreme Court has noted in *Church of Lukumi Babalu Aye, Inc. v. Hialeah* (1993), —— U.S. ——, ——, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472, 489, that:

"In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general application need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. * * * "

However, there is a distinction between an incidental impact and an intentional restriction placed on a group's ability freely to exercise its religious beliefs. If the evidence presented reveals that the CON is necessary for St. John to continue to provide Catholic-based holistic care to its members and also to members of the community at large, these factors must be considered by the board in its decision whether to grant St. John's CON application. If St. John were seeking to build a chapel on its premises for utilization by its patients, clearly the ODH could not deny a CON for that reason alone. If the evidence reveals that there is a need in the community for extra skilled nursing beds, and St. John needs additional beds to continue its religious mission, a CON cannot be denied without impinging on St. John's free exercise rights. The assignment of error is well taken.

For the foregoing reason, appellant's assignment of error is sustained, the order of the CONRB is reversed, and this cause is remanded to that board for further proceedings in accordance with law, consistent with this opinion.

*Order reversed*
*and cause remanded.*

JOHN C. YOUNG and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting by assignment.